UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA,<br><br>                              Plaintiff,<br>v.<br><br>RIP VAN 899, LLC, *et al.*,<br><br>                              Defendants. | Case No. 2:23-cv-01417-ART-NJK<br><br>ORDER PARTIALLY GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS |

Plaintiff and Counter-Defendant Safeco Insurance Company of America (Safeco) brings this suit against Defendant and Counter-Plaintiff Rip Van 899, LLC (Rip Van), seeking a declaration that it is not required to provide for representation of Rip Van in an ongoing state court tort litigation. Rip Van brings counter claims alleging that Safeco acted unfairly in its handling of a Landlord Insurance Policy under which Rip Van claims coverage.

Before the Court is Safeco's motion for judgment on the pleadings. (ECF No. 27.) The Court grants that motion in part and denies it in part, for the reasons identified below.

**I.    BACKGROUND**

Rip Van is an LLC wholly owned and operated by Dooley Tu. (ECF Nos. 1 at ¶ 4; 14 at ¶ 7.) Rip Van owns a property at 2913 Black Forest Dr., in Las Vegas, NV (the Black Forest Property). (ECF No. 14 at ¶ 14.) Tu is not named on any ownership documents related to the property and has not held herself out as an owner of that property. (*Id.* at ¶ 18.) In February 2020, Rip Van rented the Black Forest Property to Tania Guzman. (ECF Nos. 1 at ¶ 17; 14 at ¶ 19.) Unbeknownst to Van and Tu, Guzman began operating a business out of the property, called Compassionate Heart Services (CHS). (ECF No. 14 at ¶ 20.) CHS is alleged to be a "halfway house" for people who have been discharged from mental health facilities. (*Id.*) On December 31, 2020, a patient of CHS, Christopher Brown,

1

drowned in a pool located at the Black Forest property. (*Id.* at ¶ 22.) On July 12, 2022, Brown's estate brought claims in state court against Guzman, CHS, and Rip Van alleging nine causes of action, including negligence and wrongful death. (ECF No. 1-1.) Tu was later named as a defendant. (ECF No. 27 at 4 n.4.)

Safeco and Tu are parties to a "Landlord Insurance Policy" that provides premises liability coverage for the Black Forest Property. (ECF No. 1-2 at 11.) Rip Van is not a named party to that contract, even though it owns the property covered by the contract and is, for all intents and purposes, the sole landlord of the property. (*Id.*)

On September 11, 2023, Safeco brought litigation in this court, naming Rip Van and the estate of Christopher Brown as defendants and seeking a declaration that the Landlord Policy does not require it to represent Rip Van in the underlying state court litigation.[1] (ECF No. 1.) Rip Van then brought counterclaims against Safeco and others, alleging 10 causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Unjust Enrichment; (4) Negligent Misrepresentation; (5) Bad Faith; (6) Breach of Fiduciary Duty; (7) Civil Conspiracy; (8) Equitable Estoppel; (9) Declaratory Relief; (10) Respondeat Superior. (ECF No. 14 at ¶¶ 29-93.)

## II.  LEGAL STANDARD

Parties to federal litigation are entitled to seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, "[i]n reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the court 'must accept all factual allegations in the complaint [and counterclaims] as true and construe them in the light most

---

[1] Safeco does not dispute that it is required to represent Tu, since her name is on the contract. (ECF No. 27 at 4 n.4.)

2

favorable to the non-moving party.'" *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 83 n.6 (D.D.C. 2018) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "'[J]udgment on the pleadings is proper when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007)). To survive a motion for judgment on the pleadings, a claimant's complaint must give fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible." *Insco v. Aetna Health & Life Ins. Co.*, 673 F. Supp. 2d 1180, 1185 (D. Nev. 2009) (citing *Ashcroft v. Iqbal*, 559 U.S. 662, 678 (2009)).

### III.  DISCUSSION

Safeco makes three sets of arguments in its motion. First, it argues that the Landlord Policy does not cover Rip Van. This issue is potentially dispositive of Safeco's claim for declaratory judgment and Rip Van's counterclaims for breach of contract (Claim 1), breach of the implied covenant (Claim 2), bad faith (Claim 5), and declaratory relief (Claim 9). Second, Safeco argues that, even if the Landlord Policy covers Rip Van, Rip Van cannot be said to have acted in bad faith. This issue is potentially dispositive of Rip Van's counterclaims for breach of the implied covenant (Claim 2) and bad faith (Claim 5). Finally, Safeco argues that none of Rip Van's remaining counterclaims are cognizable under Nevada Law or that Rip Van has failed to properly state those claims. This issue is potentially dispositive of Rip Van's remaining claims, which include unjust enrichment (Claim 3), negligent misrepresentation (Claim 4), breach of fiduciary duty (Claim 6), civil conspiracy (Claim 7), equitable estoppel (Claim 8), and respondeat superior (Claim 10).

### A. COVERAGE UNDER THE CONTRACT

Safeco makes two arguments for why the Landlord Policy does not cover Rip Van. First, it argues that the Policy only covers parties named in the contract, and Rip Van is not a named party. Second, it argues that, even if Rip Van were a named party, the contract's exception for damages related to the provision of "professional services" would bar Rip Van from asserting coverage.

### 1. Named Parties

Safeco is correct that the Landlord Policy does not cover Rip Van, on its face. The Policy provides premises liability coverage only to the "insured." (ECF No. 5-2 at 31.) The Policy defines "insured" as (1) the named insured shown in the policy's declarations; (2) their relatives residing in their home; (3) persons under the age of 21 who are under the care of either of the above. (*Id.* at 36 (defining "insured"), 29 (defining "you").) It is uncontested Rip Van does not fall into any of these categories.

Even though Rip Van is not entitled to coverage on the face of the Landlord Policy, it has alleged facts that, if true, would entitle it to reformation of the Policy under the doctrine articulated in *Nolm, LLC v. County of Clark*. 100 P.3d 658, 661-63 (Nev. 2004). In that case, the Nevada Supreme Court held that reformation was an appropriate remedy where one party had made a unilateral mistake as to a central provision of a contract, that mistake was not the result of gross negligence, and the non-mistaken party knew of the mistake and failed to disclose it. *Id.* The court held that it was irrelevant which party bore the risk of mistake. *Id.* at 740.

Here, Rip Van alleges that it and Tu intended Rip Van to be the named party on the Policy and that Safeco knew of their intention and purposefully left Tu as the named insured. (ECF No. 14 at ¶¶ 16, 78.) To support this allegation, Rip Van alleges that (1) the Policy refers to itself as a "Landlord Policy" (ECF No. 5-2 at 3); (2) Rip Van is the sole owner and landlord of the property in question, and Safeco knew this fact (ECF No. 14 at ¶ 18); (3) insurance companies like

4

1  Safeco have a practice when selling landlord policies of confirming that the
2  insured actually owns the covered property (*id.* at ¶ 14); (4) Payne and Legacy
3  were agents of Safeco (*id.* at ¶ 90); (5) Payne and Legacy were specifically
4  instructed to buy a policy that would insure the property in question (*id.* at ¶¶
5  11-13, 15-16).

6  Read in a light most favorable to Rip Van, its alleged unilateral mistake was
7  not a result of gross negligence. *See Nolm*, 100 P.3d at 662 (finding no gross
8  negligence when county plaintiff inadvertently sold a larger parcel of land than it
9  intended because "the sale was the result of multiple County departments
10 attempting to coordinate their respective duties, the County departments were in
11 a period of flux and the sale of the remnant parcels was assigned to a division
12 that had never before conducted such sales"); *see also Hart v. Kline*, 116 P.2d
13 672, 674 (Nev. 1941) (defining gross negligence as "substantially and appreciably
14 higher in magnitude and more culpable than ordinary negligence" and
15 "equivalent to the failure to exercise even a slight degree of care"). Further, Rip
16 Van's allegations are sufficient to support a claim for reformation under Nevada
17 law.

### 2. Professional Services Exception

19 Safeco next argues that, even if Rip Van were covered under the Landlord
20 Policy, the policy's "professional services" exception would bar coverage in this
21 case.

22 The professional services exception states that Safeco will not provide
23 liability coverage for "bodily injury or property damage . . . arising out of the
24 rendering or failing to render professional services." (ECF No. 5 at ¶ 32.)
25 "Professional services" is not defined in the contract, and the parties disagree
26 about whether the accident in question (Christopher Brown drowning at the
27 Black Forest Property while arguably under Guzman and CHS's care) constituted
28 a "fail[ure] to render professional services."

Safeco is not entitled to judgment on this issue. Even if the Court were to hold that the phrase "fail[ure] to render professional services" is unambiguous and to adopt Safeco's definition of professional services as "an[y] activity done for remuneration," a reasonable juror could conclude that Christopher Brown's death did not arise out of a failure to render professional services. (ECF No. 35 at 6 (citing *Blue Ridge Ins. Co. v. Jacobsen*, No. 98-55052, 1999 WL 1073821 (9th Cir. 1999)).) There is a discrepancy in the pleadings as to whether CHS was a halfway house or something closer to a medical establishment. (*Compare* ECF No. 5 at ¶ 20 ("Guzman did not inform Apex that she ran a medical services facility") *with* ECF No. 14 at ¶ 20 ("Guzman used the property as a halfway house . . . .").) The Court must assume it was a halfway house for purposes of this motion, since that assumption would seem to impose fewer "professional" duties on Guzman and CHS. *Fleming*, 581 F.3d at 925. Given this, the Court concludes that Guzman and CHS's range of "professional services" may not have extended to the sort of poolside supervision that the state tort plaintiffs allege could have prevented Christopher Brown from drowning.

### B. BAD FAITH

Safeco gives three reasons why Rip Van's "bad faith" counterclaims should be dismissed.

First, Safeco argues that Rip Van cannot state a claim for bad faith or breach of the implied covenant of good faith and fair dealing because Rip Van has not alleged that a valid contract exists between itself and Safeco. That argument fails because, as explained above, it is impossible to say at this time that there is no contract between Rip Van and Safeco as a matter of law.

Safeco next argues that Rip Van has failed to allege a denial of coverage in support of its bad faith claim. Nevada law does not require Rip Van to make such an allegation. The Nevada Supreme Court held in *Guaranty Nat. Ins. Co. v. Potter* that an insurer could be held liable on a claim for "bad faith," even when it was

1 uncontested that the insurer had not denied coverage. 912 P.2d 267, 272 (Nev. 1996).

Finally, Safeco suggests that it should not be held liable for either of Rip Van's "bad faith" counterclaims because it has acted fairly in its coverage determination proceedings and has therefore complied with its tort and contract "good faith" obligations as a matter of law.

This argument fails as well. Rip Van alleges that Safeco is attempting to deny coverage with no reasonable basis for doing so and with knowledge that it has no reasonable basis for doing so. (ECF No. 14 at ¶¶ 60-61.) This is sufficient to survive a 12(c) motion. *Guaranty*, 912 P.2d at 272 ("Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct.").

### C. REMAINING CLAIMS

Finally, Safeco argues that the Court must dismiss Rip Van's remaining claims because (1) they are not available as a matter of law or (2) they have not been pled with requisite plausible facts. The claims in question are Unjust Enrichment (Claim 3); Negligent Misrepresentation (Claim 4); Breach of Fiduciary Duty (Claim 6); Civil Conspiracy (Claim 7); Equitable Estoppel (Claim 8); Respondeat Superior (Claim 10).

#### 1. Unjust Enrichment

In Nevada, unjust enrichment requires a showing that (1) the plaintiff conferred a benefit on defendant; (2) the defendant appreciated that benefit; (3) the defendant accepted and retained the benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof. *Unionamerica Mortg. and Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). Unjust enrichment cannot be alleged when there is an existing valid contract between the parties. *Lipshie v. Tracy Investment Co.*, 566 P.2d 819, 824 (1977) ("To permit recovery by [unjust enrichment] where a written agreement

exists would constitute a subversion of contractual principles.")

Safeco argues that Rip Van cannot allege unjust enrichment while simultaneously alleging the existence of a valid contract. Safeco is mistaken. Rip Van is entitled to plead its unjust enrichment claim in the alternative, and it has done so here. Fed. R. Civ. P. 8(e); *Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir. 1985).

Furthermore, Rip Van alleges facts sufficient to support a claim for unjust enrichment, since Rip Van alleges that it conferred a benefit on Safeco in the form of regular insurance payments, that Safeco appreciated that benefit, and that it accepted and retained that benefit without providing Rip Van anything in return, such as insurance coverage. *See Unionamerica Mortg. and Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981).

### 2. Negligent Misrepresentation

Safeco argues that Rip Van's negligent misrepresentation must be dismissed because negligence claims are not available to an insured against its insurer. It specifically argues that Nevada law already imposes duties of care on insurers through contract law, the tort of bad faith, and the implied covenant of good faith and fair dealing and that the existence of a duty of care sounding in negligence would undermine those existing duties.

The Court holds that Nevada law recognizes a claim for negligent misrepresentation against an insurance company in some cases and that Rip Van has alleged facts sufficient to support that claim here.

Since the Nevada Supreme Court has never directly addressed the issue of whether a claim for negligent misrepresentation can be sustained against an insurance company by an insured, the Court must resolve this issue as it expects a Nevada Court would. *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011).

Nevada recognizes claims for negligent misrepresentation in non-insurance

cases. *Barmettler v. Reno Air, Inc.,* 956 P,.2d 11381 (Nev. 1998).

Nevada courts have also held insurers to have duties towards their insured, outside of the duty supplied by the tort of bad faith, that sound in tort law. For example, in *Grand Hotel Gift Shop v. Granite State Ins. Co.,* the Nevada Supreme Court acknowledged that an insurer may sometimes be liable to an insured based on its failure to properly train or supervise its employees. 839 P.2d 599, 603 (Nev. 1992). In the same order, the Nevada Supreme Court considered the viability of a simple negligence claim against an insurance company. *Id.* While the court ultimately upheld the lower court's decision to bar evidence of the insurer's negligence at trial, it did so because the plaintiff had not put the defendant on notice of its negligence claim. *Id.* at 603-04. The court gave no indication that negligence claims are unavailable against insurers as a matter of law.

Some courts outside of Nevada have held that the tort of bad faith bars some negligence claims, but the opinions of those courts are not binding on this one, and their holdings are inapposite. The U.S. District Court for the District of Nevada and the California Court of Appeals, for example, have both held negligence claims to be barred when a plaintiff alleges negligence related to the processing of an insurance claim. *Phillips v. Clark County School Dist.*, 903 F. Supp. 2d 1094, 1104 (D. Nev. 2012) (holding the duty of good faith barred plaintiff's independent claim that insurer was negligent in its denial of his insurance claim); *Sierzega v. Country Preferred Ins. Co.*, No. 2:13-CV-1267 JCM-NJK, 2014 WL 1668630 at *5 (D. Nev. 2014) (same, for plaintiff's claim that defendant had negligently delayed his policy payment); *Adelman v. Associated Intern. Ins. Co.*, 90 Cal. App. 4th 352, 356 (Cal. Ct. App. 2001) (holding that "an insured can recover in tort against an insurer *for the improper handling of a claim* only upon a showing that the insurer acted in bad faith . . . such a showing requires something more than simple negligence.") (emphasis added). It makes sense that the tort of bad faith would bar negligence claims in such cases, since

9

1  bad faith already supplies a duty of care in the processing of insurance claims
2  that is "something more than simple negligence." *Adelman*, 90 Cal. App. 4th at
3  356; *see also Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996)
4  (acknowledging that bad faith has typically only applied to cases of "unreasonable
5  denial or delay in payment of a valid claim" but holding that it can also apply to
6  situations where an insurer acted wrongfully while processing and ultimately
7  *granting* a claim for coverage). But Rip Van does not allege negligent
8  misrepresentation in the processing of its insurance claim. (*See* ECF No. 14 at ¶¶
9  52-53.) Rather, it alleges that Safeco negligently misrepresented the scope of its
10 Landlord Policy, when that policy was first entered. (*Id.*) Such allegations are not
11 barred by the tort of bad faith.

12 Because Nevada allows for negligent misrepresentation claims in other
13 contexts, such a claim is not barred here, and Nevada courts have held insurers
14 to have duties towards their insured that sound in tort law, this Court holds
15 Safeco to be susceptible to a claim for negligent misrepresentation, on the facts
16 alleged.

### 3. Breach of Fiduciary Duty

18 Safeco argues there is no independent cause of action for breach of
19 fiduciary duty in an insurer/insured relationship, under Nevada law. Safeco is
20 correct. The Nevada Supreme has never acknowledged that a claim for breach of
21 fiduciary duty by an insured against an insurer. And, in *Powers v. United Services*
22 *Auto. Ass'n*, the court explicitly declined to hold that such a claim exists. 962
23 P.2d 596, 603 (Nev. 1998) ("We are not adopting a new cause of action based on
24 an insurance company's failure to put its insured's interests above its own; we
25 are merely recognizing that breach of the fiduciary nature of the insurer-insured
26 relationship is part of the duty of good faith and fair dealing."); *Strabala v. State*
27 *Farm Fire & Cas. Ins. Co.*, 124 F. App'x 517, 518 (9th Cir. 2005) ("The district
28 court was . . . correct in finding that Nevada law does not recognize an

independent claim for breach of fiduciary duty against an insurer."); *Walker v. State Farm Mut. Aut. Ins. Co.*, 259 F. Supp. 3d 1139, 1150 (D. Nev. 2017) (holding that "breach of fiduciary duty is not a cognizable claim against an insurer").

Rip Van's counterclaim for breach of fiduciary duty is dismissed, with prejudice.

### 4. Civil Conspiracy

Safeco argues that Nevada's tortious bad faith cause of action bars claims for civil conspiracy against insurers for the same reasons it bars claims for negligent misrepresentation. The Court disagrees for the same reasons it holds that claims of negligent misrepresentation can sometimes be brought against insurers. To the extent that Rip Van alleges a civil conspiracy that does not challenge actions related to Safeco's handling of its insurance claim, that civil conspiracy claim survives Safeco's motion.

Rip Van alleges specifically that Safeco, Payne, and Legacy conspired to unlawfully avoid naming Rip Van as an insured under the Policy, despite their knowledge that Rip Van was the owner of the Las Vegas property, and that this directly and proximately caused harm to Rip Van. (ECF No. 14 at ¶¶ 71-74.) This is sufficient to survive a 12(c) motion. *See Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198 (Nev. 2014).

### 5. Equitable Estoppel

Safeco agrees that equitable estoppel can be a valid claim by an insured against its insurer. It argues only that Rip Van has failed to state a claim for equitable estoppel here.

In Nevada, estoppel requires that:

(1) [Safeco] must be apprised of the true facts;

(2) [Safeco] must intend that [its] conduct be acted upon, or must so act that [Rip Van] has the right to believe it was so intended;

(3) [Rip Van] must be ignorant of the true state of facts; and

11

(4) [Rip Van] must have relied to [its] detriment on the conduct of [Safeco]. *Cheqer, Inc. v. Painters and Decorators Joint Committee, Inc.*, 655 P.2d 996, 998-99 (Nev. 1982). Both sides agree that the first two elements have been satisfied; Safeco argues that elements three and four are lacking. The Court holds that Rip Van has satisfied both of those elements.

Rip Van alleges that it was unaware that the Landlord Policy did not cover it. (ECF No. 14 at ¶¶ 13, 15.) It supports this allegation with allegations that Tu communicated her intent that Rip Van be covered by the Landlord Policy and that Tu received a "Landlord Policy" that covered the property in question, of which Rip Van was the sole owner. (*Id.* at ¶ 11; ECF No. 5-2 at 3.) Rip Van further alleges that it relied to its detriment on Safeco's indication that it would be covered under the policy by continually paying the policy premiums and refraining from seeking coverage elsewhere. (*See* ECF No. 14 at ¶ 17.)

Assuming these facts to be true, the Court concludes that Rip Van has alleged facts sufficient to state a claim for equitable estoppel.

### 6. Respondeat Superior

Finally, Safeco argues that Nevada law does not allow for negligence claims against insurers under a theory of respondeat superior.

The Court holds that Nevada law likely does allow such claims for two reasons. First, California law, which the Nevada Supreme Court looks to for guidance, states that an insurer may be vicariously liable for the tortious actions of its agent when the insurer authorized or directed the agent to perform those actions. *Desai v. Farmers Ins. Exchange*, 47 Cal. App. 4th 1110, 1118 (Cal. App. 1996); *Leigh-Pink v. Rio Properties, LLC*, 989 F.3d 735, 737 (9th Cir. 2021) ("where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance"). Second, the Nevada Supreme Court has held that the agency relationship of an insurer and its agent can be relevant to the question of whether the agent's actions can be ascribed to the insurer under

a theory of mutual mistake. *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 603 (Nev. 1992).

The Court further holds that Rip Van has sufficiently pled its claim for respondeat superior, since it alleges that Legacy and Payne were agents of Safeco, that they committed wrongful acts in the course of their employment and under control of Safeco, and that Safeco knew of their wrongful behavior. (ECF No. 14 at ¶¶ 10, 16, 90); *Molino v. Asher*, 618 P.2d 878, 880 (Nev. 1980).

The Court has considered Safeco's other arguments and finds they are without merit.

## IV.    CONCLUSION

It is therefore ordered that Safeco's motion for judgment on the pleadings (ECF No. 27) is granted in part and denied in part, in keeping with this order.

Dated this 22nd day of August 2024.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

13