1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SAFECO INSURANCE COMPANY OF
AMERICA,

Plaintiff,

v.

RIP VAN 899, LLC, *et al.*,

Defendants.

Case No. 2:23-cv-01417-ART-NJK

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

(ECF No. 59)

12    Plaintiff and Counter-Defendant Safeco Insurance Company of America
13 ("Safeco") brings this suit against Defendant and Counter-Plaintiff Rip Van 899,
14 LLC, ("Rip Van") seeking a declaration that it is not required to provide
15 representation or indemnity for Rip Van in ongoing state court tort litigation.
16 (ECF No. 5.) Safeco claims that the insurance policy at issue covers only Dooley
17 Tu, an individual and the sole owner of Rip Van, and does not cover Rip Van, the
18 owner of the property at issue. (ECF No. 59.) Rip Van brings several counter
19 claims, including a claim for declaratory judgment that it is entitled to
20 representation and coverage by Safeco. (ECF No. 14.) Before the Court is Safeco's
21 motion for summary judgment. (ECF No. 59.) For the reasons identified below,
22 the Court denies in part and grants in part that motion.

23 **I. FACTS**

24    **A. Dooley Tu, Rip Van, and The Black Forest Property**

25    Rip Van is an LLC wholly owned and operated by Dooley Tu. (ECF No. 59-
26 3 at 21–22.) It was formed in October 2009 by Tu and her late husband, Tom
27 Kim. (ECF No. 59-4.) After her husband's death in 2011, Tu became the sole
28 owner and manager of Rip Van. (ECF No. 59-5; ECF No. 56-6; ECF No. 59-3 at

21–22.) Tu owns various other LLCs, each of which owns several properties. (ECF No. 59-3 at 19–20.) Tu also owns a company, TD 899, LLC, which owns 100 percent share of each of her other companies. (ECF No. 61-2 at 97.) Rip Van acquired the property at issue in this case, which is located at 2913 Black Forest Drive, Las Vegas, Nevada, in September 2011. (ECF No. 59-7; ECF No. 59-3 at 54.)

In 2017, Tu emailed her insurance broker, Michael Payne, asking for rental insurance quotes for several properties including the Black Forest property. (ECF No. 59-11.) Payne sent quotes for the three properties which listed Tu as the insured, writing: "Here are some nice quotes for your properties . . ." (ECF No. 59-11 at 2.) Tu asked for a reduction in the deductible from $2,500 to $1,000. (*Id.*) Payne provided updated quotes, and Tu went to his office and purchased the insurance policies. (*Id.*; ECF No. 59-3 at 33.) Payne and Tu did not discuss the owner of the property, Rip Van, or whose name the insurance policy should be in. (ECF No. 59-11; ECF No. 59-3 at 34–35.) Tu made insurance payments to Safeco with her TD 899 company credit card (the only company credit card she had at that time). (ECF No. 61-2 at 97.)

**B. The Landlord Protection Policy**

The "Landlord Protection Policy" that Safeco issued to Tu was obviously meant to insure the owner of the rental property. The policy at issue, Policy No. OA1171180, was in effect from November 17, 2020, to November 17, 2021. (ECF No. 61-2 at 414.) The policy names Dooley Tu as the "insured" and 2913 Black Forest Drive, Las Vegas, Nevada as the "insured location." (*Id.*) It is undisputed that Rip Van, not Tu, owned the property. The policy states that the occupancy is "tenant" and provides coverages for, among other things, "loss of rent, rental value, and additional living expense." (*Id.* at 414, 420.) At issue here is the premises liability coverage under which Safeco covers "the **insured's** liability for **bodily injury** or **property damage** caused by an **occurrence** arising out of the

ownership, maintenance, occupancy or use of the **insured location**, not otherwise excluded." (*Id.* at 434 (emphasis in original).)

The coverage at issue here and in the underlying state lawsuit concerns the death of Christopher Brown, who drowned at the "insured location" in December 2020. Apex Properties and Management, which managed the property on Rip Van's behalf (ECF No. 59-13), rented the property to Tania Guzman in February 2020. (ECF No. 59-14.) Guzman ran Compassionate Heart Services ("CHS"), a behavioral health agency, out of the property. (ECF No. 59-15.) Both parties state that Rip Van was unaware that Guzman was operating a business out of the property. (ECF No. 59 at 8–9; ECF No. 61 at 6.) Christopher Brown, a patient of Guzman and CHS, was found dead in the pool on the property in December 2020. (*Id.* at 12.)

Tu learned of a claim related to Brown's death in January 2021. Tu sent Payne an email with the subject line: "Claim from attorney." (ECF No. 59-16.) Payne confirmed receipt and said that he would file the claim. (*Id.*) Tu then emailed Payne expressing concern that the claim might be denied because the insurance policy was under her name, but the deed was under her LLC. (*Id.*) She said: "I am wondering that the rental landlord insurance is under my personal name but house dee[d] is under my LLC that will be caused denying claim liabilities from insurance company?" (*Id.*)

In March 2021, Safeco's claim representative, Damon Taggart, emailed Payne about the ownership issue. He asked: "The owner of the property at 2913 Black Forest Dr is Rip Van 899 LLC - were you aware of this? Did RIP Van 899 LLC or Dooley Tu ask you to add them as an additional insured or additional interest to the Dooley Tu policy? Are you aware if RIP Van 899 LLC has their own liability policy?" (ECF No. 59-17 at 2.) Payne initially denied knowing that Rip Van owned the property. Payne responded to Taggart: "I am not aware of any liability policy in the LLC. Insured said to keep in her name and not to add the

LLC." (*Id.*) Payne later retracted the second statement in his deposition, saying that he and Tu had never discussed the LLC until she brought the issue to his attention in January 2021. (ECF No. 59-9 at 43–45.)

### C. Safeco's Other Insurance Policies Covering Tu's Properties

Between 2017 and 2020, Payne, on Tu's behalf, brokered eighteen policies with Safeco for eighteen different rental properties, all owned by LLCs. (ECF No. 59-3 at 50–51, 55–56.) Tu's name did not appear as the registered owner on the deed to any of these properties. (*Id.* at 56.) At no time did anyone from Safeco ask Tu about the ownership of the properties. (*Id.* at 65–66.) Most of the policies listed Tu as the insured, and some listed the LLC as an "additional insured." (*Id.* at 78–83.) Tu paid approximately $8,000 to $9,000 per year to Safeco, using her company credit card, for the eighteen insurance policies. (*Id.* at 57.)

During this time, Safeco had a policy that restricted insurance coverage to "commercial" policy coverage to any insured that owned more than sixteen properties. (ECF No. 60 at 16–17.) Only after Tu asked Safeco to add her business name to all her landlord policies in 2023 did Safeco notify Tu that she would need commercial coverage. (*Id.*)

Tu made two claims to Safeco between 2020 and 2021, before the underlying incident in this case, under insurance policies for other properties. (ECF No. 59-3 at 78–83.) According to Tu's deposition, she made a claim with Safeco for property damage at her Eldora property (insured under a policy from November 2020 to November 2021) in around 2020. (*Id.* at 78–80.) Tu was unable to recall exactly what repairs were covered but she testified that Safeco did not reject that claim. (*Id.* at 80.) Tu also made a claim with Safeco for property damage at her El Conlon property (insured under a policy from December 2020 to December 2021, with El Conlon AD289 LLC listed as an additional insured) around the same time and Safeco did not reject that claim. (*Id.* at 80–83.)

**D. The Underlying Lawsuit**

On July 12, 2022, Brown's estate brought claims in state court against Guzman, CHS, and Rip Van, alleging nine causes of action, including negligence and wrongful death. (ECF No. 1-1.) Safeco represents Rip Van in that lawsuit under a reservation of rights. (ECF No. 59 at 10; ECF No. 5 at 2.) Tu was later named as a defendant. (ECF No. 27 at 4 n.4.) Safeco represents Tu in that lawsuit and does not dispute that she is insured under the policy. (ECF No. 59 at 10.)

In August 2023, Safeco emailed Tu, stating: "As discussed and as a reminder, there is no coverage for Rip Van 899 LLC in this lawsuit." (ECF No. 61-2 at 554.)

**E. The Present Lawsuit**

In September 2023, Safeco brought the present lawsuit again Rip Van and the Estate of Christopher Brown seeking a declaration that the landlord policy does not require Safeco to represent Rip Van in the underlying lawsuit. (ECF No. 1.) Rip Van brought ten counterclaims. (ECF No. 14.) Safeco now moves for summary judgment on its single claim for declaratory relief and on Rip Van's seven remaining counterclaims. (ECF No. 59.) The Court heard oral argument on this motion on June 27, 2025, where the parties made several arguments not briefed in their motions. The Court considers those arguments in addition to the motions.

**II. DISCUSSION**

**A. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. This means that if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact, the court can grant summary judgment in favor of the moving party. In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for

summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

1   in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely

2   colorable or is not significantly probative, summary judgment may be granted.

3   *See id.* at 249–50.

4       **B. Declaratory Judgment**

5       To resolve Safeco's declaratory judgment claim, the Court must answer two

6   questions: (1) does the policy unambiguously bar coverage of Rip Van; (2) if the

7   policy bars coverage, should Safeco be equitably estopped from arguing against

8   coverage.

9       **1. Contract Interpretation**

10      Safeco first argues that the language of the policy unambiguously does not

11  provide coverage to Rip Van, instead providing coverage only to Tu, the named

12  "insured." (ECF No. 59 at 13–15.) Defendants argue, among other things, that

13  both parties reasonably intended for the landlord and owner of the property, Rip

14  Van, to be insured under the policy. (ECF Nos. 60, 61.)

15      Federal courts interpreting contracts apply the law of the state in which

16  the contract was formed. *See, e.g., Travelers Property Cas. Co. of America v.

17  ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008) (applying California law

18  to the interpretation a California insurance contract). Under Nevada law, the

19  interpretation of an insurance policy is a question of law for a court. *Starr Surplus

20  Lines Ins. Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 535 P.3d 254, 260

21  (Nev. 2023).

22      "The purpose of contract interpretation is to determine the parties' intent

23  when they entered into the contract." *Century Sur. Co. v. Casino West, Inc.*, 329

24  P.3d 614, 615 (Nev. 2014). Courts interpret policy language "from the perspective

25  of one not trained in law or in insurance, with the terms of the contract viewed

26  in the plain, ordinary, and popular sense." *Id.* (citation omitted). And courts

27  consider "the policy as a whole to give reasonable and harmonious meaning to

28  the entire policy." *Id.* (citation omitted). An interpretation "should not lead to an

absurd or unreasonable result." *Id.* "If a provision in an insurance contract is unambiguous, a court will interpret and enforce it according to the plain and ordinary meaning of its terms." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

The Court agrees with Safeco that the plain language of the contract is unambiguous. Tu is the only person listed as the insured. (ECF No. 61-2 at 414.) Rip Van does not appear on the policy. Although the title of the contract is "Landlord Protection Policy," the text of the contract itself provides for insurance for the "insured" rather than for the landlord. The "Premises Liability" portion of the policy states that Safeco "cover[s] the **insured's** liability for **bodily injury** or **property damage** caused by an **occurrence** arising out of the ownership, maintenance, occupancy or use of the **insured location**, not otherwise excluded." (ECF No. 61-2 at 434 (emphasis in original).) "Insured" is defined as "you" and certain household residents. (ECF No. 61-2 at 433.) And "you" refers to the "'named insured' shown in the Declarations," which in this case is Dooley Tu. (*Id.* at 432, 414.) Under the plain terms of the contract, Safeco agreed to cover Tu's liability for bodily injury arising out of the ownership, maintenance, occupancy, or use of the Black Forest property. Although it seems likely that such coverage would be extremely minimal—given that the property is owned by an LLC, the very purpose of which is to shield Tu from personal liability—the Court must interpret the contract according to the plain meaning of its terms.[1]

---

[1] Rip Van and the Brown Defendants further argue that the contract is not enforceable because Tu did not have an "insurable interest" in the insured property. *See* NRS 687B.060 ("[n]o contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things at the time of the loss.") NRS 687B.060. "Insurable interest" is defined as "any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment." *Id.* Although Tu likely has an insurable interest, that is a question of fact for the jury and not one that can be resolved

Because Rip Van raises equitable estoppel as both an affirmative defense and counterclaim, the Court's analysis does not end there. *See, e.g., Nationwide Mut. Ins. Co. v. Drummond,* No. 3:21-CV-00419-ART-CLB, 2024 WL 2060268, at *3 (D. Nev. May 7, 2024).

### 2. Coverage through Estoppel

The Court next determines whether Rip Van can estop Safeco from arguing that that the policy does not cover Rip Van. Rip Van brings equitable estoppel as both an affirmative defense and a counterclaim. (ECF No. 14 at 3, 15.)

"Equitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct." *In re Harrison Living Tr.*, 112 P.3d 1058, 1061–62 (Nev. 2005) (citation omitted). The Nevada Supreme Court has characterized equitable estoppel as comprising four elements: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." *Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 655 P.2d 996, 998–99 (Nev. 1982). "The requirement of actual knowledge of the true facts on the part of the party to be estopped does not apply to a party whose affirmative conduct, consisting of either acts or representations, has misled another." *Mahban v. MGM Grand Hotels, Inc.*, 691 P.2d 421, 423 (Nev. 1984). Whether equitable estoppel applies is "generally a question of fact." *In re Harrison Living Tr.*, 112 P.3d at 1061–62.

Here, there is a factual dispute as to whether Safeco knew that Rip Van

---

at summary judgment. *See McAdam v. State National Insurance Company*, 28 F. Supp. 3d 1110, 1117 (S.D. Cal. 2014). ("Whether an insurable interest existed is a question of fact."); *see also Ohio Sec. Ins. Co. v. Axis Ins. Co.*, No. C15-5698 BHS, 2018 WL 2716808, at *4 (W.D. Wash. June 6, 2018) (same).

1   was the owner and landlord of the Black Forest property at the time that it

2   entered into the agreement with Tu. This was a Landlord Protection Policy that

3   by its terms covers liability arising out of "the ownership, maintenance,

4   occupancy or use of the insured location." (ECF No. 61-2 at 434.) As part of its

5   underwriting process, Safeco could have ascertained through Tu or publicly

6   accessible information that Rip Van was the owner of the property. According to

7   Payne, the underwriting process is supposed to "correct [the broker] if [the broker]

8   made a mistake of any sort." (ECF No. 61-2 at 778–79.) As part of their "due

9   diligence process," Safeco would typically "reach out to [the broker] via e-mail"

10  and ask the broker to make a correction. (*Id.* at 779.) That never happened in this

11  case. (*Id.* at 278.)

12       Such an inquiry might have been triggered by the fact that Tu had eighteen

13  landlord policies for eighteen rental properties. All were owned by LLCs, some

14  listed the LLC as an additional insured, but most did not. Safeco's internal policy

15  required landlords insuring sixteen or more properties to secure commercial

16  coverage. Though this internal policy was not applied to Tu, it could have

17  triggered a closer look at whether Safeco was insuring the LLC owner and/or Tu,

18  who owned the LLCs but did not own these properties.

19       There is also a factual dispute as to whether Rip Van was aware that the

20  insurance policy only covered liability for Tu (the third element of estoppel). Tu,

21  who requested the insurance policy on behalf of Rip Van, stated in her deposition

22  that, when she applied for this policy, she "expect[ed] [that] when any incident

23  happened [she would] be protected by insurance." (ECF No. 59-3 at 57.) In her

24  capacity as a representative of Rip Van, Tu testified that she paid for the

25  insurance policies with her company card, suggesting that she believed that the

26  insurance covered Rip Van and did not cover Tu. (*Id.* at 89.) The first time that

27  Tu learned of any kind of issue with her insurance coverage was December 31,

28  2020. (*Id.* at 94.)

Finally, there is a factual dispute as to the second and fourth elements: whether Safeco considered the policy valid and intended Rip Van to act with the assurance that it was, and whether Rip Van relied to its detriment on Safeco's conduct by failing to get any other insurance. Before Brown's death, Safeco paid Tu for claims related to properties owned by her LLCs. Defendants have provided evidence that Tu made at least two claims to Safeco for property damage related to other properties, each of which was owned by an LLC but listed Dooley Tu as the insured. (ECF No. 59-3 at 76–83.) According to Tu's deposition, one of those policies listed the LLC owner as an "additional insured," but the other was under only Tu's personal name despite being owned by one of her LLCs. (*Id.*) Neither claim was rejected by Safeco. (*Id.*) And Rip Van, perhaps acting in reliance on that conduct, did not get any other insurance. There is no evidence that adding Rip Van would result in higher premiums. After the error on this policy was discovered, Payne added Rip Van to the policy as an additional insured. (ECF No. 59-9 at 115.) He then did the same for "14 or 15" policies for other properties owned by Tu's LLCs "on [his] own" after simply "call[ing] [Tu] to get the LLC information." (*Id.* at 116–17.) In order to do so, he just "type[d] it in." (*Id.* at 141.)

Because material questions of fact remain on the issue of equitable estoppel, summary judgment is inappropriate on Safeco's claim for declaratory relief. *See, e.g., Mahban*, 691 P.2d at 424; *Topaz Mut. Co.*, 839 P.2d at 613. A reasonable juror could conclude that Safeco knew that Tu was not the owner of the property, that Rip Van was not aware that the policy did not cover it, and that Rip Van relied to its detriment upon Safeco's conduct in processing claims and foregoing other insurance. For the same reason, summary judgment is inappropriate on Rip Van's counterclaims for declaratory relief and equitable estoppel.

//

//

11

### C. Breach of Contract Counterclaim

Safeco moves for summary judgment on Rip Van's breach of contract counterclaim for the same, arguing that there was no contract or alternatively no breach. (ECF No. 59 at 14 n.13, 16.)

The elements of a breach-of-contract claim in Nevada are: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013).

Even assuming the existence of a valid contract, Rip Van has failed to establish breach because Safeco has been defending Rip Van under reservation in the underlying lawsuit and no indemnity obligation has yet arisen. Rip Van failed to address this claim in its response to Safeco's motion for summary judgment. (*See* ECF No. 61.)

Therefore, the Court grants summary judgment in favor of Safeco on Rip Van's breach of contract counterclaim.

### D. Breach of Implied Covenant and Bad Faith Counterclaims

Safeco moves for summary judgment on Rip Van's related counterclaims for breach of the implied covenant of good faith and fair dealing and common law bad faith, arguing the claim fails as a matter of law because there is no contract between Safeco and Rip Van and factually because Safeco is defending Rip Van under reservation in the litigation. (ECF No. 59 at 18–20.)

"An insurer's bad faith in handling a claim against an insured is actionable as a breach of the implied covenant of good faith and fair dealing between the insurer and the insured." *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F. Supp. 2d 1082, 1093 (D. Nev. 2013), *as corrected* (Mar. 27, 2013). "Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *U.S. Fidelity & Guar. Co. v. Peterson,* 540 P.2d

1070, 1071 (Nev. 1975). In other words, bad faith exists where there is an "actual or implied awareness of the absence of a reasonable basis for denying benefits of the insurance policy." *Allstate Ins. Co. v. Miller,* 212 P.3d 318, 324 (Nev. 2009). The existence of an insurer's bad faith is a matter of fact to be decided by the jury. *Id.*

Here, viewing the evidence in the light most favorable to Rip Van, a genuine issue of material fact exists as to whether Safeco acted unreasonably or in bad faith. Safeco's failure to ensure that the "landlord policy" covered the landlord of the property and Safeco's failure to inform Tu of this until after a large claim arose creates a factual issue. *See Allstate Ins. Co.,* 212 P.3d at 325 (failure to adequately inform an insured of a settlement offer is a factor for the trier of fact to consider when evaluating a bad faith claim). A reasonable juror could consider Rip Van's acceptance of prior smaller claims under similar policies relevant in making this determination. And a reasonable juror could find that Safeco's violation of its internal guidelines in insuring Tu's eighteen properties constitutes bad faith. *See TMC HealthCare v. Truck Ins. Exch.*, 55 F. App'x 803, 805 (9th Cir. 2003) (genuine issue of material fact as to whether insurer's denial of coverage was contrary to internal guidelines precluded summary judgment).

The Court therefore denies Safeco's request for summary judgment on Rip Van's counterclaims for breach of the implied covenant of good faith and fair dealing and common law bad faith.

### E. Unjust Enrichment Counterclaim

Safeco moves for summary judgment on Rip Van's unjust enrichment counterclaim, arguing that the claim is not available because there is a written contract and because Safeco did not accept a benefit from Rip Van. (ECF No. 59 at 20–21.)

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental

principles of justice or equity and good conscience." *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (citation omitted). The essential elements of unjust enrichment are "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Id.* Unjust enrichment cannot be alleged when there is an existing valid contract between the parties. *Lipshie v. Tracy Investment Co.*, 566 P.2d 819, 824 (Nev. 1977).

Safeco first argues that this claim fails as a matter of law because there is a valid contract between Safeco and Tu. (ECF No. 59 at 20–21.) But because there is no written contract between Safeco and Rip Van and the Court has already found triable issues as to the equitable estoppel claim, unjust enrichment is not precluded on that ground. Safeco next argues that this claim fails on the facts because Rip Van has not provided evidence that Safeco accepted a benefit from Rip Van, rather than from Tu. Because Tu made payments with a company credit card, not her personal account, the premiums effectively came from Rip Van. (ECF No. 61-2 at 97.) Safeco argues that the fact that the payments were made from the TD 899 credit card amounts to an admission that "the premiums were paid by Tu's Credit Card." (ECF Nol. 65 at 12.) This argument is without merit: Tu's payments from her company credit card (the only company credit card she had at the time) indicates that the payments were effectively made by Rip Van (a company wholly owned by TD 899). Safeco has failed to show that it did not receive a benefit from Rip Van through these payments.

The Court therefore denies Safeco's request for summary judgment on Rip Van's counterclaim for unjust enrichment.

### F. Respondeat Superior Counterclaim

Safeco moves for summary judgment on Rip Van's respondeat superior counterclaim, arguing that the claim fails as a matter of law and that there is no dispute that Payne and Legacy were neither employees nor agents of Safeco. (ECF

14

No. 59 at 23–24.)

In Nevada, "an agency relationship is formed when one who hires another retains a contractual right to control the other's manner of performance." *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 602 (Nev. 1992). "The existence of an agency relationship is generally a question of fact for the jury if the facts showing the existence of agency are disputed, or if conflicting inferences can be drawn from the facts." *Schlotfeldt v. Charter Hosp. of Las Vegas*, 910 P.2d 271, 274 (Nev. 1996). But when the undisputed facts lead only to the inference that no agency relationship exists, Nevada courts have made no-agency determinations as a matter of law. *Grand Hotel Gift Shop*, 839 P.2d at 603.

Nevada law presumes that independent insurance agents like Payne are agents of the insured and not the insurer, even when they are acting in a "dual agency" capacity. *Id.* Rip Van has failed to provide any evidence to rebut that presumption. Rip Van argues that "neither Safeco nor Mr. Payne disclosed the agreement governing their relationship" and that "[s]uch an agreement exists between the insurer and the broker in the insurance agency." (ECF No. 61 at 24.) But it is Rip Van's burden to produce evidence on this element and they have failed to meet that burden.

The Court therefore grants summary judgment to Safeco on Rip Van's respondeat superior counterclaim.

## III.  CONCLUSION

It is therefore ordered that Safeco's motion for summary judgment (ECF No. 59) is granted in part and denied in part as follows.

Safeco's motion for summary judgment on Safeco's claim for declaratory relief is denied.

Safeco's motion for summary judgment on Rip Van's counterclaims for declaratory relief (Count 9), equitable estoppel (Count 8), breach of the implied covenant of good faith and fair dealing (Count 2), common law bad faith (Count

5), and unjust enrichment (Count 3) is denied.

       Safeco's motion for summary judgment on Rip Van's counterclaims for breach of contract (Count 1) and respondeat superior (Count 10) is granted.

       DATED: July 22, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

16